IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHAD LEWIS,<br><br>                  Plaintiff,<br><br>vs.<br><br>CITY OF NAMPA, IDAHO, OFFICER COWDERY, in his official capacity as a police officer of the City of Nampa, Idaho, CURTIS HOMER, in his capacity as the Chief of Police of the City of Nampa, Idaho; Canyon County, Idaho, GEORGE NOURSE in his official capacity as the Canyon County Sheriff, John and Jane Does in their official capacity as agents and/or employees of the city of Nampa, Idaho, John and Jane Does in their official capacity as agents and/or employees of the Canyon County Jail, John and Jane Does in their official capacity as agents and/or employees of Canyon County,<br><br>                  Defendants. | Case No. CV04-502-S-EJL<br><br>MEMORANDUM DECISION<br>AND ORDER |

       Pending before the Court in the above-entitled matter are Defendants' motions for summary judgment (Docket Nos. 22 and 23), Canyon County Defendants' motions to strike (Docket Nos. 31 and 39) and motion for an extension of time to participate and file mediation statement (Docket No. 32). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Factual Background

       Plaintiff Chad Lewis filed his complaint on October 4, 2004 alleging the Defendants violated his Constitutional and civil rights pursuant to 42 U.S.C. § 1983 and committed the torts of false arrest and imprisonment and unlawful detainer in violation of Idaho state law. Defendants named

MEMORANDUM DECISION AND ORDER - Page 1
06ORDERS\Lewis_sj.WPD

in the action are the City of Nampa, Nampa City Police Officer Cowdery, Chief of the Nampa Police Department Curtis Homer (collectively these three defendants are referred to as the "Nampa Defendants"), Canyon County and Canyon County Sheriff George Nourse (collectively these two defendants are referred to as the "Canyon County Defendants") as well as other John and Jane Does who work for either the City of Nampa or Canyon County. The individuals are being sued solely in their official capacities.

On or about Friday, June 20, 2003, Nampa Police Officer Cameron Cowdery was dispatched to Mercy Medical Center in Nampa, Idaho. Officer Cowdery was informed by the hospital staff that the baby born to Heather Lewis and Chad Lewis had tested positive for cocaine and the baby would probably be taken from his parents under the Child Protective Act. Officer Cowdery asked dispatch to determine if there were any outstanding warrants for either Heather Lewis or Chad Lewis. Dispatch informed Officer Cowdery that a Peace Bond or no contact order existed for Chad Lewis regarding Heather Lewis. The Peace Bond was issued in the state of Louisiana. Officer Cowdery asked for confirmation of the no contact order. Jamie Wood was assigned to contact the Louisiana State Police to make the confirmation. Dispatch confirmed with the Louisiana Protective Order Registry that the Peace Bond was still in effect at approximately 6:57 p.m. See Agency NPD Event demonstrating the confirmation of the no contact order. Dispatch did not contact the Louisiana issuing court.

Based on the confirmation of the no contact order, Officer Cowdery issued a citation for violation of no contact order (Idaho Code § 18-920) arrested Chad Lewis. Mr. Lewis and Heather Lewis maintain in their affidavits Mr. Lewis was told he was being arrested pursuant to a no contact order from Pennsylvania. Officer Cowdery indicates he advised Mr. Lewis the arrest was pursuant to a Louisiana no contact order. Mr. Lewis informed the officer the peace bond had been dismissed. Officer Cowdery delivered Mr. Lewis to the Canyon County Jail (Dale Haile Detention Center) on June 20, 2003 at approximately 7:20 p.m.

According to Nampa Police Chief Curtis Homer, the policy of the Nampa Police Department regarding enforcement of no contact orders (from Idaho or other states) was to have dispatch attempt

to determine the status of such orders prior to any arrest for a violation of such orders. This standard practice was known to the dispatchers and officers.

On Monday, June 23, 2003, Chad Lewis was arraigned on the citation which states "violation of no contact order." Counsel was appointed to represent Chad Lewis. Mr. Lewis entered a "not guilty" plea. Bail was set at $1,000 and Mr. Lewis was remanded to the custody of the Canyon County Sheriff pursuant to a Commitment on Bond.

On Tuesday, June 24, 2003, Officer Cowdery received a fax copy of the Peace Bond and forwarded it to the Nampa City Attorney. Officer Cowdery was not aware the Peace Bond had been dissolved at the time of the arrest or when the copy of the Peace Bond was received and forwarded to the Nampa City Attorney.

On June 25, 2003, Heather Lewis wrote a letter addressed to Judge Ford and delivered the letter to the Canyon County Courthouse and the Nampa City Prosecuting Attorney's Office requesting assistance and stating the protection order had been dissolved on December 12, 2002.

The Louisiana Court records establish that the November 25, 2002 Peace Bond was issued with a one year duration. Such Peace Bond was dissolved on December 12, 2002, however, for unknown reasons, the Dissolve Order was not entered into the Louisiana Protective Order Registry until June 26, 2003.

On Friday, June 27, 2003 at 4:15 p.m., the Clerk of the District Court filed a Order to Release indicating the charge of violation of a no contact order was being dismissed and Chad Lewis should be released from custody. The Order indicates the jail was to receive a copy of the Order to Release.

Exhibit D to the Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Docket No. 29) is a copy of the Order to Release.[1] On the bottom of such copy it is handwritten: "* Faxed 6/27 @ 4:15 to 6643 Andy." The Canyon County Defendants' copy of the Order to Release (Exhibit C to Docket No. 23) does not have the handwritten statement on the bottom of the Order to Release.

---

[1]This exhibit is the subject of the motion to strike addressed later in this Order.

MEMORANDUM DECISION AND ORDER - Page 3
06ORDERS\Lewis_sj.WPD

The Lead Criminal Clerk, Denise Kennel, testified in her deposition (Docket No. 53) that the handwriting on the bottom of the Order to Release was hers and that she personally faxed the order at 4:15 p.m. on June 27, 2003 to extension 6643 and put the jail's hard copy of the Order to Release in the jail's inbox.  She did not have personal knowledge that the jail received the fax.  The clerk indicated the hard copy of the order would not have been delivered to the Jail until sometime on Monday, June 30, 2003.  The clerk testified the clerk's office was using a loaner fax machine which appears to indicate from the log that fax was not delivered until Monday, June 30, 2003 at 8:37 a.m.         Canyon County Jail employee Andy Kiehl filed an affidavit in this case stating he was on duty on June 27, 2003 from 8:00 a.m. to 5:00 p.m. and that the fax machine is located in his office.  He states under oath that he did not receive a fax copy of the Order to Release Mr. Lewis on June 27, 2003.  Mr. Kiehl states the Order to Release was received by the jail on Monday, June 30, 2003.  Mr. Lewis was released from jail on June 30, 2003 at 8:48 a.m.

On April 14, 2004, the Nampa City Clerk received a letter dated April 9, 2004 from Plaintiff's counsel providing notice of Plaintiff's 42 U.S.C. § 1983 and state law claim pursuant to the Idaho Tort Claim Act.  The same letter was also mailed to the Canyon County Clerk and was received on April 13, 2004.

### Standard of Review for Summary Judgment Motions

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue

of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[2]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

---

[2] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM DECISION AND ORDER - Page 5
06ORDERS\Lewis_sj.WPD

Nampa Defendants' Motion for Summary Judgment

Nampa Defendants move for summary judgment on the 42 U.S.C. § 1983 claims as well as the state law claims. The Nampa Defendants maintain Officer Cowdery had probable cause to arrest Mr. Lewis and did not violate his constitutional rights. Plaintiff argues that throughout the criminal proceedings he was not aware the Louisiana no contact order was the basis for his arrest. Police Chief Homer maintains Plaintiff has failed to establish a policy of the Nampa Police Department that allows for the violation of Constitutional rights and that the policy at issue in this case was followed and protected Mr. Lewis's Constitutional rights. Plaintiff maintains the policy was defective in that it did not involve investigation of Mr. Lewis' claim that the no contact order had been dissolved. The Nampa Defendants also claim the notice for a state tort action was not timely filed and the state law torts must be dismissed. Plaintiff concedes the tort notice was not timely filed, but maintains the tort notice is not required for § 1983 claims.

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. See Wyatt v. Cole, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. Id. Acting under color of state law is "a jurisdictional requisite for a § 1983 action." West v. Atkins, 487 U.S. 42, 46 (1988). In this case, it is not disputed that Officer Cowdery was acting under color of state law when he on duty and was responding to a call from the hospital. Therefore, the question becomes, did Officer Cowdery's actions deprive Mr. Lewis of a right, privilege or immunity secured by the Constitution or federal law.

Mr. Lewis has a right to be free from an unlawful arrest. However, law enforcement officers have the duty to arrest a person if they have probable cause to believe such person is committing a crime. Beck v. Ohio, 379 U.S. 89 (1964). In this case, Mr. Lewis contends Officer Cowdery did not have probable cause to arrest him based on an expired no-contact order from Louisiana. The undisputed record at the time of the arrest does not support Mr. Lewis' argument. As to Officer Cowdery's conduct, the Court finds probable cause existed to arrest Mr. Lewis pursuant to the

Louisiana Peace Bond.[3] Probable cause is evaluated based on the totality of the circumstances known to the officer at the time of the arrest. Probable cause to arrest exists where "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [suspect] has committed or was committing an offense." Id. at 91.

Prior to the arrest, Officer Cowdery was informed a no contact order existed against Mr. Lewis. Idaho Code § 39-6303A sets forth Idaho's adoption of the "Uniform Interstate Enforcement of Domestic Violence Protections Orders Act" which allows foreign domestic violence protection orders to be enforced in Idaho as if the protection order was an Idaho order. Officer Cowdery observed Mr. Lewis in contact with Heather Lewis at the hospital. Officer Cowdery confirmed the validity of the Peace Bond prior to arresting Mr. Lewis. At the time of the arrest, the officer had no knowledge from the Louisiana Police that the Peace Bond had been dissolved. The Louisiana Protective Order Registry indicated the Peace Bond was still in effect. It was not until June 26, 2003 that the Louisiana Protective Order Registry was properly updated with the dissolution of the no contact order.

Mr. Lewis claims he was not informed throughout the criminal proceedings as to why he was being arrested. However, he does not dispute he was provided a written citation which indicated he was being arrested for violation of a no contact order and Idaho Code § 18-920 was listed as the relevant statute. He does not dispute he was arraigned on the charge of violation of a no contact order and appointed counsel to represent him or that he pleaded "not guilty" to the charges. In fact, Mr. Lewis states he told the officer the no contact order was no longer in effect. Simply put, the record does not support Mr. Lewis's contention that he was at no time informed of the basis for his arrest.

Protestations by Mr. Lewis at the time of arrest are not sufficient to establish the Peace Bond was no longer in effect or that the officer was not acting in good faith upon the confirmed

---

[3] While Plaintiff maintains he was told it was a Pennsylvania no contact order, the state of issuance is not determinative of probable cause as the officer was told by the dispatcher that she had confirmed the out of state no contact order. Additionally, this statement by Plaintiff is inconsistent with Plaintiff's protestations when being arrested that the Louisiana no contact order had been dismissed.

MEMORANDUM DECISION AND ORDER - Page 7
06ORDERS\Lewis_sj.WPD

information in his possession. Moreover, the Louisiana courts were not open at the time of arrest to check into the protestations of Mr. Lewis. An officer does not have to stop an arrest in progress to investigate verbal protestations of innocence by the person being arrested. Broam v. Bogan, 320 F.2d 1023 (9th Cir. 2003).

Therefore, based on the undisputed facts and as a matter of law, Officer Cowdery had probable cause to arrest Mr. Lewis and Mr. Lewis was not unlawfully arrested. While it is unfortunate Mr. Lewis was arrested on a Friday evening when his protestations could not be investigated with the Louisiana courts, the arrest on June 20, 2003 did not violate Mr. Lewis's federally protected Constitutional rights, privileges or immunities. Accordingly, any and all § 1983 claims against Officer Cowdery shall be dismissed.

Next, Plaintiff claims Chief of Police Homer's policies led to the violation of Mr. Lewis' constitutionally protected rights. Since Plaintiff has sued Defendant Homer solely in his official capacity, this is actually a claim against the municipality. To make a claim against a municipality for a § 1983 violation, four criteria must be satisfied:

> (1) That [the Plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the Plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation.."

Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).

A municipality may not be held liable under § 1983 solely because it employed a constitutional wrongdoer. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Plaintiff claims Police Chief Homer's policies resulted in the deliberate indifference on arrest of Mr. Lewis by failing to verify the validity of the no contact order prior to the arrest. The Court finds it is undisputed that the Nampa Police Department has a policy to check the validity of protective orders prior to arresting suspects. It is also undisputed that this policy was followed when Jamie Wood was assigned by the dispatcher to contact the Louisiana State Police to make the confirmation. After the no contact order came up in a national database search for outstanding warrants and protective orders, dispatch confirmed with the Louisiana Protective Order Registry that the Peace Bond was

still in effect at approximately 6:57 p.m. See Agency NPD Event demonstrating the confirmation of the no contact order.

The Supreme Court stated in Baker v. McCollan, 443 U.S. 137, 145-46 (1979), a case of mistaken identity wherein the wrong person was arrested and detained, that neither the arresting officer nor the official responsible for custody have a Constitutional duty to perform an error-free investigation:

> . . .[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and jury.

In this case, the municipality has a policy of further investigation to ensure validity of protection orders prior to arrest. Plaintiff apparently would like police officers to confirm all no contact orders via a telephone call to the issuing courts prior to any arrest. It is important to note that Plaintiff does not contend the written conditions of the Peace Bond were vague and subject to interpretation therefore requiring further investigation with the issuing court prior to arrest. Instead, Plaintiff argues the failure to investigate the status of the no contact order with the issuing court violated his rights. Investigation with the issuing court is not required by the Constitution or other federal law. Instead, the registry program has been established to confirm the validity of warrants and no contact orders that come up via a national database search and it is up to the local courts to provide correct information to the state's registry. It is unfortunate the dissolution of the Peace Bond was not recorded with the registry, but absent more, this clerical error in Louisiana can in no way serve to establish "deliberate indifference" on the part of the municipality in Idaho.

In this situation, the issuing court was not available at the time of the arrest on a Friday evening and would not be available until the following Monday. The Nampa Police Department has a policy to confirm the validity with the issuing state's police department which in this case led to the Louisiana Protective Order Registry. The Nampa Police Department is not in charge of updating the Louisiana registry and the Louisiana courts do not know why the dissolution order was not forwarded to the registry in December of 2002. However, the act by the dispatcher of confirming

MEMORANDUM DECISION AND ORDER - Page 9
06ORDERS\Lewis_sj.WPD

the validity of the Peace Bond with the Louisiana registry prior to the arrest of Mr. Lewis eviscerates Plaintiff's argument that a policy existed which was deliberately indifferent to the rights of Mr. Lewis not to be unlawfully arrested. Plaintiff has failed to establish the Nampa Police Department policy, which was followed in this case, to confirm the validity of the no contact order prior to arrest arises as a matter of law to "deliberate indifference" by the municipality or was the moving force behind any unconstitutional conduct. The § 1983 claims against the Nampa Defendants must be dismissed.

As to the remaining state law claims against the Nampa Defendants as well as the Canyon County Defendants, these must be dismissed as Plaintiff's notice of filing tort action via the April 9, 2004 letter was not timely filed pursuant to the 180 day notice requirement of Idaho Code § 6-908. The Nampa Defendants received the Plaintiff's notice of tort letter on April 14, 2004 and the Canyon County Defendants received the same letter on April 13, 2004. Plaintiff alleges he was unlawfully arrested on June 20, 2003 and illegally detained until June 27, 2003.

Notice of the tort claim needed to be received by the municipalities within 180 days from the date the claim arose which was at the latest June 27, 2003. Timely notice "is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate." McQuillen v. City of Ammon, 113 Idaho 719, 747 P.2d 741 (1987). This is true even when the complaint also alleges violations of 42 U.S.C. § 1983. Anderson v. Spalding, 137 Idaho 509, 50 P.3d 1004 (2002). Plaintiff's letter dated April 9, 2004 is clearly outside the 180 notice period based on the dates of Mr. Lewis' arrest. Moreover, Plaintiff failed to comply with the mandatory bond requirements when suing peace officers under Idaho Code 6-610. See Greenwade v. Idaho State Tax Commission, 119 Idaho 501, 808 P.2d 420 (Ct. App. 1991). Plaintiff's argument the bond requirement was implicitly repealed pursuant to Kent v. Pence, 116 Idaho 22, 773 P.2d 290 (Ct. App.1989) has been rejected by this Court in a number of cases. See, e.g., Barnes v. City of Boise, Civil Case No. 89–1343(Order on Motion to Dismiss)(April 6, 1990). Based upon these fatal defects to Plaintiff's state law claims, the Court need not address the immunity argument raised by Defendants. The state law claims are dismissed against all Defendants.

Canyon County Defendants' Motions to Strike

Canyon County Defendants seek to strike Exhibit D to the Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Docket No. 29) which is the Order of Release with the handwritten statement the document was faxed to Andy at extension 6643. Plaintiff's counsel has filed an affidavit relating his conversation with the court clerk who's handwriting is on the Order of Release. The affidavit by counsel of the clerk's testimony is, of course, hearsay. A party is obligated to submit admissible evidence in response to a motion for summary judgment. Fed. R. Civ. P. 56(e). The Court allowed Plaintiff to depose the court clerk in December of 2005 in order to file an affidavit that would comply with the applicable rules. The Court is satisfied with the foundation established in the deposition regarding the handwriting on Exhibit D. Accordingly, the motion to strike Exhibit D is DENIED.

A second motion to strike was filed by the Canyon County Defendants seeking to strike paragraphs 3 through 15 and Exhibits F, G, H, and I of the Affidavit of Dean A. Martin (Docket No. 37) on the basis the affidavit contained hearsay and lacks proper foundation. The Court agrees that the affidavit contains inadmissible hearsay and lacks proper foundation and that the objected to portions of the affidavit of Mr. Martin should be stricken. The Court finds no prejudice is striking portions of the affidavit since Plaintiff was allowed to depose the court clerk and file a supplemental affidavit (Docket No. 53) in January of 2006. As to the exhibits, the Court is satisfied that a proper foundation has now been laid for these exhibits and they are not stricken. Therefore, the motion is granted in part and denied in part.

Canyon County Defendants' Motion for Summary Judgment

Canyon County Defendants move for summary judgment on the 42 U.S.C. § 1983 claims as well as on the state law claims. The state law claims have already been discussed and will be dismissed based on Plaintiff's failure to comply with the Idaho Tort Claims Act. Plaintiff's § 1983 claims against the Canyon County Defendants are claims against the municipality since the Complaint only names individual defendants in their official capacities.

It is undisputed that the Canyon County Defendants did not arrest Mr. Lewis. Canyon County Defendants held Mr. Lewis in custody and released him upon receipt of a court order. Canyon County Defendants argue summary judgment is appropriate on the § 1983 claims as Mr. Lewis' Constitutional rights were not violated and Plaintiff can not point to policy or custom that resulted in a violation of Mr. Lewis' Constitutional rights. Plaintiff argues the Canyon County Jail ("Jail") violated his Fourth and Fifth Amendment rights and liberty interests. Canyon County Defendants deny they have a policy that violates liberty interests of inmates.

As set forth earlier, to make a claim against a municipality for a § 1983 violation, four criteria must be satisfied:

> (1) That [the Plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the Plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation.."

Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).

Plaintiff first argues he has a liberty interest to be free from arrest without probable cause. This claim cannot be against the Canyon County Defendants as they did not arrest Mr. Lewis. Canyon County Defendants had no duty to investigate Mr. Lewis's claim of innocence or lack of probable cause for his arrest. See Baker v. McCollan, 443 U.S. 137, 145-46 (1979)

Next, Plaintiff argues he should be free from deprivation of liberty without due process. The Court finds this claim is merit-less and summary judgment in favor of the Canyon County Defendants is appropriate. Officer Cowdery arrested Mr. Lewis and delivered him to the Canyon County Jail. The Canyon County Defendants are not responsible for determining whether an arrest was or was not proper. This is the job of the courts. It is undisputed Mr. Lewis was arraigned on the charges and appointed counsel to represent him and bail was set that if paid would allow for his release pending trial. Since the bond amount was not paid, the Court ordered Mr. Lewis remanded to the Canyon County Jail. Later that same week, the Court dismissed the case upon verification the Peace Bond in Louisiana had been dissolved and entered an order to release Mr. Lewis. Clearly, Mr. Lewis' due process rights were not violated by the Canyon County Defendants.

The third claim of a violation of Constitutional rights is the fact that Mr. Lewis was detained the for the weekend after the Order to Release was entered late Friday afternoon on June 27, 2003. Specifically, Plaintiff claims his liberty interest was violated when he was detained approximately 64 hours after the court issued the Order to Release and it was the Canyon County Defendants policy that created a deliberate indifference to the liberty interests of Mr. Lewis.

The courtroom clerk remembers faxing the Order to Release to the Jail's fax extension and placing a copy of the order in the Jail's inbox. The court clerk does not have personal knowledge that the fax in fact went through on Friday, June 27th. It appears from the log from the fax machine, that the fax machine did not process the fax until Monday, June 30th at 8:37 a.m.

The Jail employee responsible for faxes, Mr. Andy Kiehl, states under oath he did not receive the Order to Release on Friday. Additionally, the court clerk testified in her deposition that the hard copy of the court's release order would not have been delivered to the Jail until Monday, June 30, 2003 as the Jail's court mail is only delivered once a day and that does not occur at the end of the day. Mr. Lewis was released when the Jail received the Order to Release on Monday morning.

The question for § 1983 liability becomes has the Plaintiff established that a "policy or custom" existed at the Jail that delayed the release of inmates and creates "deliberate indifference" to an inmate's liberty interest? The Plaintiff has not carried his burden. Even accepting the fact that the court clerk put the order on the fax machine late Friday afternoon, there is no evidence before this Court that establishes that the fax went through without an error. No transmission sheet indicating the fax reached the correct destination (extension 6643) on Friday afternoon was provided by Plaintiff. The Jail staff states it did not receive the fax, therefore the failure to receive a fax from another entity cannot be held to create "deliberate indifference" on the part of the Jail.

It is important to note that Plaintiff does not allege there was a pattern or custom in the Jail to delay the release of inmates. Plaintiff offers no other inmates that maintain the Jail sits on the faxes ordering the release of inmates. The Court believes such has not been provided as such a policy or custom is counterproductive to the running of a jail. Counties do not want to keep inmates in custody for any longer than ordered by the courts. Plaintiff has failed to establish the increased costs of delaying the release of inmates is the goal or policy of the Jail.

Mr. Lewis argues the Jail should maintain a fax log. Such a solution would not have provided for Mr. Lewis' release if no fax was received by the Jail to put on the log. The well-intended solution fails to establish a policy or custom on the part of the Jail in delaying the release of inmates. The Jail had a statutory duty to maintain custody of Mr. Lewis until he posted the bond set by the arraignment judge or until an order of release was received. The Jail released Mr. Lewis when the Order of Release was received on Monday, June 30, 2003. While it is unfortunate that the Order of Release was signed by the state court judge at the end of the business day on Friday, the Canyon County Defendants were not responsible for getting a copy of the release order to the Jail. Such responsibility was the court's.

In viewing the facts in a light most favorable to Plaintiff, the Court finds genuine issues of material fact do not exist and as a matter of law the Court finds there was not a policy or custom to delay Mr. Lewis' release. Rather, the Court finds that clerical or technological errors prevented the Jail from receiving Mr. Lewis' Order of Release until Monday, June 30, 2003. Such error was inadvertent and not a result of a deliberate inaction or standing policy on the part of the court or the county. There is simply no genuine issue of material fact that exists regarding whether a policy or custom existed at the Jail to deny or act deliberately indifferent to the inmates' rights to be released in a timely manner. Accordingly, Plaintiff has failed to establish at least one of the applicable criteria for maintaining a § 1983 claim against a municipality and the § 1983 claims against the Canyon County Defendants must be dismissed.

## Conclusion

Having thoroughly reviewed the record in this matter, the Court finds the Defendants' motions for summary judgment should be granted as the non-moving party has failed to show that there is a genuine issue as to any material fact and the relevant case law supports that the Defendants are entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## ORDER

Being fully advised in the premises, the Court hereby orders:

1) Nampa Defendants' Motion for Summary Judgment (Docket No. 22) is **GRANTED**.

2) Canyon County Defendants' Motion to Strike (Docket No. 31) is **DENIED**.

3) Canyon County Defendants' Motion for Summary Judgment (Docket No. 23) is **GRANTED**.

4) Canyon County Defendants' Motion for Extension of Time (Docket No. 32) is **DENIED AS MOOT**.

5) Canyon County Defendants' Second Motion to Strike (Docket No. 39) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

DATED: **February 8, 2006**

_____
Honorable Edward J. Lodge
U. S. District Judge